# Attachment A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on September 30, 2004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. |
| | : | |
| | : | Mag. No. 05-0294M-01 |
| | : | |
| v. | : | |
| | : | VIOLATIONS: |
| | : | |
| LARRY SOLOMON | : | 18 U.S.C. § 1347 |
| | : | (Health Care Fraud); |
| Defendant | : | 18 U.S.C. § 1035 (a)(2) |
| | : | (False Statements Regarding |
| | : | Health Care Matters); |
| | : | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | : | (Laundering of Monetary Instruments) |
| | : | 18 U.S.C. § 2 |
| | : | (Causing an Act to be Done) |
| | : | and |
| | : | 18 U.S.C. § 982(a)(1) and (7) and (b)(1) |
| | : | (Criminal Forfeiture) |

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By *Michael Darby* 9-28-05
Deputy Clerk

**INDICTMENT**

The Grand Jury charges that:

Introduction

At various times relevant and material to this Indictment:

1. The defendant, LARRY SOLOMON, represented himself to be a physician assistant who provided services in the District of Columbia and elsewhere.

2. BPS Medical and Rehabilitation, P.L.L.C. ("BPS Medical") was incorporated in the District of Columbia in order to provide health care to the public through one or more out-patient medical clinics. The defendant, LARRY SOLOMON, was a manager of BPS Medical.

-1-

3. Diversified Medical and Associates ("Diversified Medical") was incorporated in the District of Columbia in order to provide health care to the public through one or more out-patient medical clinics. The defendant, LARRY SOLOMON, and another person were managers of Diversified Medical.

4. BPS Medical and Diversified Medical opened a medical clinic at 544 8th Street, N.E., Washington, D.C. Later the businesses moved to other locations in the District of Columbia, including 811 8th Street, N.E. and 1647 Benning Road, N.E., as well as 10111 Martin Luther King Jr., Highway, Bowie, Maryland.

5. The defendant, LARRY SOLOMON, expanded his practice to include conducting home visits to senior citizens living in private and public residential buildings throughout the District of Columbia.

6. BPS Medical, Diversified Medical, and the defendant, LARRY SOLOMON, participated in the Medicaid program.

7. BPS Medical, Diversified Medical, and the defendant, LARRY SOLOMON, participated in the Medicare program.

## The Medicaid Program

8. Medicaid was a government sponsored health insurance program for eligible low-income and needy individuals, such as children and the disabled.

9. Medicaid was jointly financed with federal and District of Columbia funds.

10. In the District of Columbia, the Department of Health Medical Assistance Administration (hereinafter referred to as "MAA") administered the Medicaid program.

11. MAA contracted first with First Health and then with ACS, Inc., both fiscal agents,

to receive, process, and adjudicate Medicaid claims on behalf of health care providers in the District of Columbia. Reimbursement checks were sent to health care providers by MAA.

12. Medicaid was a "health care benefit program" as defined in 18 U.S.C. Section 24(b) because it was a public plan or contract, affecting commerce, under which medical benefits, items, and services were provided to individuals.

13. Medicaid, through ACS, Inc., did not reimburse a provider for every patient visit or medical treatment. Rather, the medical service or treatment provided by the provider was required to be "reasonable and necessary" under the Medicaid program.

## The Medicare Program

14. Medicare was a government sponsored health insurance program for individuals 65 years and older, for certain disabled individuals, and for Social Security recipients. The program covered specified in-hospital and out-patient medical services, doctors' services, and certain medical supplies.

15. A senior citizen or disabled person who was eligible for Medicare could participate by enrolling in the Medicare program. Medicare typically paid about 80% of the cost of treatment by a Medicare approved physician with other insurance providers or the patient paying the other 20%.

16. The Medicare program was primarily funded through appropriations from the United States Treasury. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration (HCFA).

17. Medicare was a "health care benefit program" as defined in 18 U.S.C. Section 24(b) because it was a public plan or contract, affecting commerce under which medical benefits,

-3-

items, and services were provided to individuals.

18.  Medicare reimbursed health care institutions and professionals such as physicians on a "fee for service" basis through at least two different programs. First, Part A of Medicare provided reimbursement for hospital stays and similar related medical services. Second, Part B of Medicare provided payment for doctors' services, outpatient hospital services, certain home health services, medical equipment and supplies, and other related services.

19.  CMS contracted with a private carrier called TrailBlazer Health Enterprises, LLC ("TrailBlazer") located in Timonium, Maryland, to administer Medicare claims for the District of Columbia. Trailblazer received, processed, adjudicated and paid claims for reimbursement submitted by Medicare Part B health care providers. In order to receive payment from Medicare, providers were required to submit claims to Trailblazer.

20.  Medicare, through TrailBlazer, did not reimburse a provider for every patient visit or medical treatment. Rather, the medical service or treatment provided by the provider was required to be "reasonable and necessary" under the Medicare program.

<u>Billing Procedures</u>

21.  On June 17, 2002, BPS Medical's Medicare application was approved by Trailblazer, and the business was given a unique group identification number. Also at that time, the defendant, LARRY SOLOMON, was provided a unique personal identification number and a performing provider number.

22.  Pursuant to Medicare policy, any services provided by an individual provider had to be billed under both the group number and the individual's UPIN number or performing provider number.

23. Pursuant to Medicaid policy, a claim for a physician assistant's services had to be billed to Medicaid using the provider number of the physician who supervised him or her, as well as the group number.

24. Medicare and Medicaid required that, when submitting reimbursement claims, providers identified the types of services and procedures for which they were requesting reimbursement using certain 5 digit codes, referred to as "CPT" codes. CPT codes were derived from a manual published annually by the American Medical Association known as the "Current Procedural Terminology" or "CPT" manual. The CPT manual specifically assigned a unique 5 digit CPT code to thousands of different medical treatments and procedures performed by health care providers in a variety of medical specialties.

25. Medicare and Medicaid required health care providers to use only the CPT code that truthfully and accurately reflected the actual medical treatment provided by health care providers to the patient so that Medicare or Medicaid could determine if the claim was reimbursable. CPT codes were reimbursed at different rates, depending on the service provided and the professional category of the person providing the service.

26. To obtain reimbursement from Medicare, a health care provider was required to submit claim forms to Trailblazer in either paper or electronic format. To obtain reimbursement from Medicaid, a health care provider was required to submit claim forms to ACS, Inc., in either paper or electronic format. The Medicare and Medicaid Programs required that reimbursement claims submitted by participating health care providers include, among other things, the following information: (1) the name of the beneficiary (patient); (2) the date(s) the claimed services were provided; (3) the type(s) of services provided; and (4) the CPT code corresponding

-5-

to that service.

## COUNT ONE

## (HEALTH CARE FRAUD)

27. Beginning in or about May 1999 and continuing until in or about March 2005, the defendant, LARRY SOLOMON, devised and executed a scheme and artifice to defraud the Medicare and Medicaid health benefit programs of money through submission of false claims.

### Purpose of the Scheme and Artifice

28. It was a purpose of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, would fraudulently obtain money from Medicare and Medicaid which he would use for his own benefit.

### The Scheme

29. It was part of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, incorporated or caused to be incorporated, entities that were involved in transferring money generated from BPS Medical's fraudulent billing of Medicare and Medicaid. These corporations included: Solomon Administrative and Medical Services ("SAMS"); POTSOL Management Services, Inc. ("POTSOL"); Diversified Medical and Associates; Diversified Medical Supply, S-C Properties, Katie's Fashions, and Solomon-Crozier Construction Company.

30. It was part of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, opened numerous bank accounts in conjunction with BPS Medical, Diversified Medical, and the other businesses listed above. These accounts were established in names such as BPS Medical and Rehabilitation Clinic; BPS Medical and Rehabilitation Clinic,General ("BPS General"); BPS Medical and Rehabilitation Clinic,Solomon Expense ("Solomon

Expense"); BPS Medical and Rehabilitation Clinic,DMA Expense ("DMA Expense"); POTSOL Management Services, Inc. ("POTSOL"); Solomon Administrative and Medical Services ("SAMS"); and Solomon Administrative and Medical Services, Expense ("SAMS Expense").

31. It was part of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, performed fraudulent billing or caused others to perform fraudulent billing of Medicare and Medicaid on behalf of BPS Medical.

32. It was part of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, did not wear a badge when visiting residents of senior buildings indicating that he was in fact a physician assistant, as required by D.C. Mun. Regs. tit. 17, §4911.8 (2001).

33. It was a part of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, would:

- - cause claims to be submitted to Medicare and Medicaid for services on dates when neither he nor any other employee of BPS Medical had provided services;

- - cause claims to be submitted to Medicare and Medicaid using CPT Codes that applied to services that were more comprehensive and lengthy than the services actually provided;

- - cause claims to be submitted to Medicare and Medicaid for services even though no services were provided because the patients were hospitalized on the dates for which the services were claimed;

- - cause claims to be submitted to Medicare and Medicaid for services even though the patients were deceased on the dates for which the services were claimed; and

- - cause claims to be submitted to Medicare at a physician's rate even though the defendant, LARRY SOLOMON, or another physician assistant actually provided the service to the beneficiary.

34. It was part of the scheme and artifice to defraud that on or about June 11, 2004, the defendant, LARRY SOLOMON, contracted to pay $36,000 to be paid in monthly installments of $3,000, to another person who had been a manager at BPS Medical for the right to submit fraudulent claims to Medicare and Medicaid on behalf of patients in senior buildings.

35. It was part of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, would use revenues generated from Medicare and Medicaid reimbursements made to BPS Medical to fund other business ventures, including clothing and computer stores and a food warehouse.

36. It was part of the scheme and artifice to defraud that the defendant, LARRY SOLOMON, would use revenues generated from Medicare and Medicaid reimbursements to purchase automobiles, clothing, and insurance policies; to make credit card and child support payments; and to pay property taxes and mortgage payments on a house in Glenn Dale, Maryland.

37. Between in or about May 2000 until in or about March 2005, in the District of Columbia and elsewhere, the defendant LARRY SOLOMON, knowingly and willfully devised and executed a scheme and artifice to defraud health care benefit programs, namely Medicare and Medicaid, and to obtain from Medicare and Medicaid, money under the custody and control of Medicare and Medicaid, by fraudulent pretenses, representations, and promises, namely, false claims, in connection with the delivery of, and payment for, health care benefits, items, and services.

**(Health Care Fraud, and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1347 and 2)**

**COUNTS TWO THROUGH FIFTEEN**

**(FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS)**

1. Paragraphs 1 through 37 of Count 1 are realleged and incorporated as though fully set forth herein.

2. Between in or about May 2000 and continuing until in or about March 2005, in the District of Columbia and elsewhere, the defendant, LARRY SOLOMON, in a matter involving a health care benefit program, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations and made and used materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries in connection with the delivery of and payment for health care benefits, items, and services, to wit: claims submitted to Medicare and Medicaid as described below for each count:

| COUNT | PATIENT | DATE OF CLAIMED SERVICE | CPT CODE BILLED | MEDICAID OR MEDICARE | AMOUNT REIMBURSED TO BPS MEDICAL |
|---|---|---|---|---|---|
| TWO | DM133 | 7/29/2003 | 99349 | Medicare | $85.05 |
| THREE | RT562 | 3/24/2004 | 99349 | Medicare | $101.50 |
| FOUR | CP932 | 3/26/2003 | 99349 | Medicare | $85.05 |
| FIVE | RC801 | 11/14/2003 | 99349 | Medicare | $100.06 |
| SIX | DP197 | 12/10/2004 | 99349 | Medicare | $101.50 |
| SEVEN | BD244 | 12/11/2003 | 99349 | Medicare | $100.06 |
| EIGHT | LS427 (deceased) | 12/16/2003 | 99349 | Medicare | $100.06 |
| NINE | PC660 (deceased) | 2/25/2003 | 99349 | Medicare | $99.47 |

| TEN | FL909 (deceased) | 7/9/2003 | 99349 | Medicare | $100.06 |
| ELEVEN | CS779 | 3/10/05 | 99349 | Medicaid | $60.03 |
| TWELVE | GM584 | 3/23/05 | 99349 | Medicaid | $60.03 |
| THIRTEEN | DF143 | 1/5/05 | 99349 | Medicaid | $50.86 |
| FOURTEEN | AA324 (deceased) | 1/25/05 | 99349 | Medicaid | $60.03 |
| FIFTEEN | KS381 (deceased) | 5/7/04 | 99348 | Medicaid | $38.83 |

**(False Statements Regarding Health Care Matters, Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1035 (a)(2) and 2)**

## COUNTS SIXTEEN THROUGH THIRTY-THREE

### (LAUNDERING A MONETARY INSTRUMENT)

1. Paragraphs 1 through 37 of Count 1 are realleged and incorporated as though fully set forth herein.

2. On or about each of the dates specified below, within the District of Columbia and elsewhere, the defendant, LARRY SOLOMON, did knowingly and willfully conduct, and attempt to conduct, a financial transaction, affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, a Federal health care offense in violation of Title 18, United States Code, Sections 1347 and 1035(a)(2), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds, represented the proceeds of some form of unlawful activity, in violation

-10-

of Title 18, United States Code, Section 1956(a)(1)(B)(i), as follows:

| Count | Date of Transaction | Description of Transaction | Amount |
|---|---|---|---|
| Sixteen | 8/9/2004 | Deposit made into Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilition Clinic, Solomon Expense) from Wachovia Bank Account No. xxx5714 (BPS Medical and Rehabilitation Clinic, General) | $3,300 |
| Seventeen | 8/9/2004 | Transfer made from Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilition Clinic, Solomon Expense) to Wachovia Bank Account No. 4626 (POTSOL Management Services, Inc.) | $3,300 |
| Eighteen | 8/9/2004 | Deposit made into Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) from Wachovia Bank Account No. xxx5714 (BPS Medical and Rehabilitation Clinic, General) | $2,200 |
| Nineteen | 8/9/2004 | Transfer made from Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) to Wachovia Bank Account No. xxx9658 (Solomon Administrative Services) | $3,000 |
| Twenty | 8/9/2004 | Deposit made into Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) from Wachovia Bank Account No. xxx5714 (BPS Medical and Rehabilitation Clinic, General) | $1,800 |
| Twenty-one | 8/9/2004 | Transfer made from Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) to Wachovia Bank Account No. xxx9658 (Solomon Administrative Services) | $1,200 |
| Twenty-two | 8/9/2004 | Deposit made into Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) from Wachovia Bank Account No. xxx2054 (BPS Medical and Rehabilitation Clinic) | $ 825 |

| Twenty-three | 8/9/2004 | Transfer made from Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) to Wachovia Bank Account No. xxx4626 (POTSOL Management Services, Inc.) | $ 450 |
|---|---|---|---|
| Twenty-four | 8/9/2004 | Deposit made into Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) from Wachovia Bank Account No. xxx4626 (POTSOL Management Services, Inc.) | $ 200 |
| Twenty-five | 8/10/2004 | Transfer made from Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) to Wachovia Bank Account No. xxx9658 (Solomon Administrative Services) | $3,000 |
| Twenty-six | 8/10/2004 | Deposit made into Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) from Wachovia Bank Account No. xxx2054 (BPS Medical and Rehabilitation Clinic) | $6,430 |
| Twenty-seven | 8/10/2004 | Transfer made from Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) to Wachovia Bank Account No. xxx4626 (POTSOL Management Services, Inc.) | $1,450 |
| Twenty-eight | 8/10/2004 | Deposit made into Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) from Wachovia Bank Account No. xxx5730 (BPS Medical and Rehabilitation Clinic, DMA Expense) | $2,000 |
| Twenty-nine | 8/10/2004 | Transfer made from Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) to Wachovia Bank Account No. xxx9658 (Solomon Administrative Services) | $1,000 |
| Thirty | 12/1/2004 | Transfer made from Wachovia Bank Account No. xxx2054 (BPS Medical and Rehabilitation Clinic) to Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) | $3,090 |
| Thirty-one | 12/1/2004 | Transfer made from Wachovia Bank Account No. xxx2054 (BPS Medical and Rehabilitation Clinic) to Wachovia Bank Account No. xxx5714 (BPS Medical and Rehabilitation Clinic, General Account) | $1,900 |

| Thirty-two | 12/2/2004 | Transfer made from Wachovia Bank Account No. xxx2054 (BPS Medical and Rehabilitation Clinic) to Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) | $3,780 |
|---|---|---|---|
| Thirty-three | 12/3/2004 | Transfer made from Wachovia Bank Account No. xxx2054 (BPS Medical and Rehabilitation Clinic) to Wachovia Bank Account No. xxx1899 (BPS Medical and Rehabilitation Clinic, Solomon Expense) | $6,650 |

**(Laundering of Monetary Instruments, Causing an Act to be Done, in Violation of Title 18, United States Code Sections 1956(a)(1)(B)(i) and 2)**

### FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)(7)

1. The violations alleged in Counts One through Fifteen of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

2. As a result of the offenses alleged in Counts One through Fifteen of this Indictment, the defendant, LARRY SOLOMON, shall forfeit to the United States property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of Title 18, United States Code, Section 1347; and false statements regarding health care matters, in violation of Title 18, United States Code, Section 1035(a)(2); including, but not limited to:

Automobiles:

(a) one 2001, champagne colored, Isuzu Trooper, bearing VIN JACDJ58X217514022 and Maryland tag A004131, registered in the name of Larry Solomon;

(b) one 1998, forest green colored, Land Rover, bearing VIN SALJY1246WA769102 and Maryland tag M505937, registered in the name of Larry Solomon;

_____ Real Property:

(c) all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11315 Old Prospect Hill Road, Glenn Dale, Maryland, more fully described as:

Beginning for the same, at a point in the road leading from Glendale to Upper Marlboro and at the end of the sixth line of a deed from Gabriel Duvall to Augusta Duvall for 38.8 acres, dated July 8, 1891, and recorded among the land records of Prince George's County, Maryland, in Liber J.W.B. No. 20 at Folio 437. It also being the beginning point of the first tract of 9.07 acres of a deed by Mary F. Sill to Forest L. Peddecord made September 11, 1937 and recorded in Liber 479 at Folio 377, and running thence with the seventh line of aforesaid deed of Duvall to Duvall with an allowance of 2 deg. 20 min. variation South 67 deg. 49 min. East 467.28 feet to the end thereof; thence South 33 deg. 00 min. 50 sec. East 606.46 feet: thence South 37 deg. 40 min. East 165 feet to a stone. Thence leaving said road and running North 77 deg. 0 min. 19 sec. West 778.19 feet to a stone on the sixth line of aforesaid conveyance. Thence with the said sixth line North 9 deg. 40 min. West 632.10 feet to a stone on the said of aforesaid road. Thence still on line North 9 deg. 40 min. West 15 feet to the beginning, Containing 7.55 acres.

Savings and escepting [sic] all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to Pirly I. Gatton and Shirley M. Gatton, by deed dated January 12, 1959, and recorded March 26, 1959 in Liber 2308 at folio 554, and containing .302 acres, and, saving and excepting all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to Pirly I. Gatton and Shirly M. Gatton, By deed dated March 4, 1954 and recorded March 6, 1954, in Liber 1725 at folio 552 and containing .71 acres; and saving and excepting all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to Edgar P. Carroll and Ruth Carroll, by deed dated August 2, 1957 and recorded August 13, 1957, in Liber 2132 at folio 121 and containing 1 acres; and saving and excepting all that portion conveyed by Louis L. Poats and Dorothy E. Poats to Donald E. Teachout, Jr. and Clara R. Teachout by deed dated January 10, 1975 and recorded January 14, 1975 in Liber 4454 at folio 905 and containing .070 acres; and saving and excepting all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to DeForest W. Millard and Irene H. Millard by deed dated September 14, 1957 and recorded September 24, 1957 in Liber 2146 at folio 60 and containing 21,780 square feet of land.

Money Judgment:

    (d)    A sum of money equal to the total amount of property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of 18 U.S.C. § 1347; and false statements regarding health care matters, in violation of 18 U.S.C. § 1035(a)(2). Fed.R.Crim.P. 32.2(b)(1).

By virtue of the commission of the felony offenses charged in Counts One through Fifteen of this Indictment, any and all interest that the defendant has in property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of health care fraud, in violation of Title 18, United States Code, Section 1347; and false statements regarding health care matters, in violation of Title 18, United States Code, Section 1035(a)(2); is vested in the United States and hereby forfeited to the United States, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7), as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek

forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code Sections 982(a)(7) and 982(b)(1))**

## FORFEITURE ALLEGATION UNDER 18 U.S.C. § 982(a)(1)

1. The violations alleged in Counts Sixteen through Thirty-three of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

2. As a result of the offenses alleged in Counts Sixteen through Thirty-three of this Indictment, the defendant, LARRY SOLOMON, shall forfeit to the United States any property, real or personal, involved in, or traceable to such property involved in money laundering, in violation of Title 18, United States Code, Section 1956 including, but not limited to:

    Automobiles:

    (a)    one 2001, champagne colored, Isuzu Trooper, bearing VIN JACDJ58X217514022 and Maryland tag A004131, registered in the name of Larry Solomon;

    (b)    one 1998, forest green colored, Land Rover, bearing VIN SALJY1246WA769102 and Maryland tag M505937, registered in the name of Larry Solomon;

    Real Property:

    (c)    all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11315 Old Prospect Hill Road, Glenn Dale, Maryland, more fully described as:

        Beginning for the same, at a point in the road leading from Glendale to Upper

Marlboro and at the end of the sixth line of a deed from Gabriel Duvall to Augusta Duvall for 38.8 acres, dated July 8, 1891, and recorded among the land records of Prince George's County, Maryland, in Liber J.W.B. No. 20 at Folio 437. It also being the beginning point of the first tract of 9.07 acres of a deed by Mary F. Sill to Forest L. Peddecord made September 11, 1937 and recorded in Liber 479 at Folio 377, and running thence with the seventh line of aforesaid deed of Duvall to Duvall with an allowance of 2 deg. 20 min. variation South 67 deg. 49 min. East 467.28 feet to the end thereof; thence South 33 deg. 00 min. 50 sec. East 606.46 feet: thence South 37 deg. 40 min. East 165 feet to a stone. Thence leaving said road and running North 77 deg. 0 min. 19 sec. West 778.19 feet to a stone on the sixth line of aforesaid conveyance. Thence with the said sixth line North 9 deg. 40 min. West 632.10 feet to a stone on the said of aforesaid road. Thence still on line North 9 deg. 40 min. West 15 feet to the beginning, Containing 7.55 acres.

Savings and escepting [sic] all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to Pirly I. Gatton and Shirley M. Gatton, by deed dated January 12, 1959, and recorded March 26, 1959 in Liber 2308 at folio 554, and containing .302 acres, and, saving and excepting all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to Pirly I. Gatton and Shirly M. Gatton, By deed dated March 4, 1954 and recorded March 6, 1954, in Liber 1725 at folio 552 and containing .71 acres; and saving and excepting all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to Edgar P. Carroll and Ruth Carroll, by deed dated August 2, 1957 and recorded August 13, 1957, in Liber 2132 at folio 121 and containing 1 acres; and saving and excepting all that portion conveyed by Louis L. Poats and Dorothy E. Poats to Donald E. Teachout, Jr. and Clara R. Teachout by deed dated January 10, 1975 and recorded January 14, 1975 in Liber 4454 at folio 905 and containing .070 acres; and saving and excepting all that portion of land conveyed by Louis L. Poats and Dorothy E. Poats to DeForest W. Millard and Irene H. Millard by deed dated September 14, 1957 and recorded September 24, 1957 in Liber 2146 at folio 60 and containing 21,780 square feet of land.

Money Judgment:

(d)   A sum of money equal to the total amount of property involved in, or traceable to property involved in money laundering, in violation of 18 U.S.C. §1956. Fed.R.Crim.P. 32.2(b)(1).

By virtue of the commission of the felony offenses charged in Counts Sixteen through Thirty-

-17-

three of this Indictment, any and all interest that the defendant has in the property involved in, or traceable to property involved in money laundering is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

3. If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Sections 982(a)(1); Title 18, United States Code, Section 982(b)(1))**

A TRUE BILL:
FOREPERSON

ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA